b

### UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF LOUISIANA
### ALEXANDRIA DIVISION

| | |
|---|---|
| **VINCENT SIMMONS,** Plaintiff | **CIVIL DOCKET NO. 1:22-CV-01971** |
| **VERSUS** | **DISTRICT JUDGE SUMMERHAYES** |
| **POLICE JURY OF AVOYELLES PARISH, ET AL.,** Defendant | **MAGISTRATE JUDGE PEREZ-MONTES** |

### REPORT AND RECOMMENDATION

Before the Court are Motions to Dismiss filed by: Defendant Alicia Jeanette Theriot Knoll, Jerold Edward Knoll, Charles Addison Riddle III (ECF No. 19); Beau Floyd Juneau and Lisa Saucier Juneau ("the Juneau's") (ECF NO. 20); Robert Laborde ("Laborde") (ECF No. 37); Defendant Avoyelles Parish Police Jury ("APPJ") (ECF No. 54); and Plaintiff Vincent Simmons ("4") (ECF No. 86).   Plaintiff Vincent Simmons ("Simmons") filed two motions to amend (ECF Nos. 66, 88) and a Motion to Vacate a prior order – the Order on another Motion to Amend/Correct Complaint filed by Defendants Knoll, Knoll, and Riddle (ECF No.89).

Because Didier's heir has not been served, the Complaint against Didier should be DISMISSED WITHOUT PREJUDICE.

Simmons's first Motion to Amend Complaint (ECF No. 66) to state a claim against the APPJ should be GRANTED. However, because Simmons has not stated a factual or legal basis for a claim against the APPJ, the APPJ's Motion to Dismiss (ECF No. 54) should be GRANTED and Simmons's action against the APPJ should be DISMISSED WITHOUT PREJUDICE.

Because Simmons's voluntary Motion to Dismiss Amended Complaint (ECF NO. 86) should be GRANTED and his Amended Complaint (ECF No. 84) should be STRICKEN, Defendants' Motion to Vacate (ECF No. 89) the Order granting Simmons's second Motion to Amend and their Appeal (ECF No. 87) of the Order granting Simmons's Second Motion to Amend should both be DENIED AS MOOT.

Simmons's third Motion to Amend Complaint (ECF No. 88) should be DENIED IN PART as to the substitution of Heath Pastor in his official capacity as the Avoyelles Parish Assessor and successor in office to former Assessor John Laborde in his official capacity. Simmons's third Motion to Amend Complaint (ECF No. 88) should be GRANTED IN PART in all other respects.

The Motion to Dismiss filed for former Avoyelles Parish Sheriff Floyd Juneau ("Juneau") (ECF No. 20) should be DENIED IN PART on the *Brady* issue and GRANTED IN PART on all other claims and issues.

The Motion to Dismiss filed for former Avoyelles Parish Deputy Sheriff Robert Laborde (ECF No. 37) should be GRANTED IN PART as to Simmons's claims for

excessive force, assault, and battery because they are prescribed, and DENIED IN PART as to all other claims.

Because Eddie Knoll, Jeannette Knoll, and Riddle have prosecutorial immunity, their Motion to Dismiss (ECF No. 19) should be GRANTED IN PART as to Simmons's claims against them in their individual capacities – except the claim against Eddie Knoll for fabrication of evidence – and those claims should be DENIED AND DISMISSED WITH PREJUDICE.  The Motion to Dismiss (ECF No. 19) should be DENIED IN PART as to the claim against Eddie Knoll in his individual capacity for fabrication of evidence.  And finally, the Motion to Dismiss (ECF No. 19) should be GRANTED IN PART and Simmons's claim against Eddie Knoll, Jeannette Knoll, and Riddle in their official capacities should be DISMISSED WITH PREJUDICE.

## I.    Background

Plaintiff Simmons filed a Complaint pursuant to 42 U.S.C. § 1983 and state law against the named Defendants, alleging he spent over 44 years in a Louisiana prison, mostly in solitary confinement, for two rapes that he did not commit.  ECF No. 1. *See State v. Simmons,* 357 So.2d 517, 517 (La. 1978) (affirming Simmons's convictions on two counts of attempted aggravated rape for which he was sentenced to 100 years).  Simmons asserts that his 1977 convictions were vacated in 2022 (ECF

3

No. 19-3) and he was released.[1]  Simmons contends his convictions were vacated because he did not have a fair trial because: the alleged rape victims (14-year-old twin sisters) later admitted they had lied about what had occurred and that one of the girls had already had sex with a cousin (State's witness Keith Laborde); medical examinations by the Coroner showed one of the twins was still a virgin and the other had no injuries; evidence favorable to the defense (witness statements and the medical report) was suppressed; a lineup from which Simmons was picked was improperly suggestive (Simmons was the only person in handcuffs); and at post-conviction proceedings, the district attorneys stated that all evidence had been disclosed to defense counsel.  However, in 2022, District Attorney Riddle testified that

---

[1] There is no state court of appeal opinion on direct appeal in this case.  In 1977, the Louisiana Supreme Court had appellate jurisdiction over "[c]riminal cases in which the penalty of death or imprisonment at hard labor may be imposed, or in which A fine exceeding three hundred dollars or imprisonment exceeding six months has been actually imposed."  *City of New Orleans v. Ehrlich*, 256 La. 226, 229, 235 So.2d 577, 578 (1970); *see also State v. Gatson,* 434 So.2d 1315 (La. App. 3d Cir. 1983); *State v. James,* 329 So. 2d 713, 714-15 (La. 1976).  The Louisiana Supreme Court still has exclusive appellate jurisdiction over, generally, all criminal appeals and criminal writ applications for convictions imposed prior to July 1, 1982. *See* La. Const. Art. 5, § 5(E).

There is also no opinion in a publication service from the Louisiana district court that decided to vacate Simmons's convictions, and it is not known whether the court issued a written opinion.  And the decision was not appealed.  Defendants attached the transcript of the hearing and verbal ruling that vacated Simmons's convictions.  ECF No. 19-3.

Because the Defendants filed Motions to Dismiss, the Court will rely on Simmons's version of events as set forth in his Complaint.

4

favorable evidence had, in fact, not been disclosed to Simmons at the time of trial. ECF No. 1.

At Simmons's hearing in 2022, the state judge found the prosecutors did not possess the evidence concerning the lineup the medical examiner's (coroner's) reports at the time of trial. ECF No. 19-3 at 27. The judge found the evidence was not available at the time of trial through no fault of either the prosecutors or the defense attorneys. ECF No. 19-3 at 29. The judge further held there were due process violations that deprived Simmons of a fair trial. ECF No. 19-3 at 28-29. The judge also found there was newly discovered evidence that met the "four factors of *State v. Cavalier*,"[2] but did not make a specific determination as to Simmons's claim of actual innocence. ECF No. 19-1 at 29. The court vacated Simmons's convictions and sentences, and ordered a new trial. ECF No. 19-1 at 30. The District Attorney then moved for a dismissal of all charges against Simmons, which was granted.[3] ECF No. 19-1 at 33.

---

[2] "A defendant seeking a new trial based on newly discovered evidence must establish four elements: (1) that the new evidence was discovered after trial; (2) that failure to discover the evidence before trial was not attributable to his lack of diligence; (3) that the evidence is material to the issues at trial; and (4) that the evidence is of such a nature that it would probably produce a different verdict in the event of retrial." *State v. Cavalier*, 96-3052 (La. 10/31/97), 701 So.2d 949, 951.

[3] The District Attorney pointed out that, even if he retried Simmons and convicted him, Simmons had already served more time that he could possibly be sentenced to now, because the maximum possible sentences for attempted aggravated rape have been lowered.

Less than a year later, Simmons filed this civil rights complaint against the following named Defendants (ECF No. 1):

1) the APPJ;
2) the Avoyelles Parish District Attorney's Office ("APDA");
3) Fabius Anthony Didier as the heir of Fabius "Potch" Didier (in his individual and official capacities), a former Avoyelles Parish Sheriff;
4) Lisa Saucier Juneau and Beau Floyd Juneau as the heirs of former Avoyelles Parish Sheriff Floyd Juneau (in his individual and official capacities);
5) Robert Laborde, a former Avoyelles Parish Deputy Sheriff, in his individual and official capacities;
6) Barbara Decuir-Walker ("Walker-Decuir"), a former Avoyelles Parish Deputy Sheriff, in her individual and official capacities;
7) the unopened succession of Burton Dauzat ("Dauzat"),[4] a former Avoyelles Parish Deputy Sheriff, in his individual and official capacities;
8) the unopened succession of Capt. Melvin Villemarette[5] ("Villemarette"), a former Avoyelles Parish Deputy Sheriff, in his individual and official capacities;
9) the unopened succession of John Laborde,[6] a former Avoyelles Parish Assessor, in his individual and official capacities;
10) the Succession of Marilynn Larson Bordelon[7] ("Bordelon") as the heir of Dr. Filmore Paul "F.P." Bordelon, a former Avoyelles Parish Coroner, in his individual and official capacities;
11) Jerold Edward "Eddie" Knoll, a former Avoyelles Parish District Attorney, in his individual and official capacities;
12) Alicia Jeanette Theriot Knoll, a former Avoyelles Parish Assistant District Attorney, in her individual and official capacities;

---

[4] A curator was appointed to represent Dauzat's unopened succession and was served. ECF No. 71.

[5] A curator was appointed to represent Villemarette's unopened succession of Villemarette and was served. ECF No. 72.

[6] A curator was appointed to represent John Laborde's unopened succession and was served. ECF No. 73.

[7] A curator was appointed to represent the unopened succession of Marilyn Larson Bordelon and was served. ECF No. 72.

13) Charles Addison Riddle III ("Riddle"), the current Avoyelles Parish District Attorney, in his individual and official capacities; and

14) ABC Insurance Companies.

Simmons contends Defendants: (1) concealed the fact that Keith Laborde had a sexual relationship with one of the twins; (2) arrested Simmons without probable cause; (3) physically assaulted and shot Simmons in an attempt to force him to confess; (4) conducted an unconstitutionally suggestive lineup; (5) suppressed information about the details of the lineup; (6) coached Keith Laborde and the twins to identify Simmons and to give consistent statements and testimony; (7) suppressed the vaginal examination reports and prior inconsistent statements of Keith Laborde and the twins; (8) suppressed by medical conducted by Bordelon which showed one of the girls had not been raped and the other one had no physical injuries; (9) concealed exculpatory evidence from Simmons, the juries, and the prosecutors; (10) testified falsely; (11) made false statements to the court on Simmons's post-conviction motions; (12) fabricated evidence (a police report); (13) amended the indictment from aggravated rape to attempted aggravated rape to conceal the one of the girls had lied about the circumstances of the alleged rape; and (14) perpetuated a "rape myth" that any black man accused of raping a white female was guilty.  ECF No. 1 at 17-20.

Simmons asserts § 1983 and state law claims for violation of due process, municipal liability, malicious prosecution, false imprisonment, and intentional and/or reckless infliction of emotional distress.   Simmons seeks monetary

damages.    Simmons also requests that, pursuant to La. C. Civ. P. art. 5091(c), attorneys be appointed to represent the unopened successions.

Defendant Decuir-Walker answered the Complaint *pro se*.  ECF No. 18.

Defendants Riddle and the Knolls filed a Motion to Dismiss for failure to state a claim.  ECF No. 19.  Simmons opposes that Motion.  ECF No. 35.

The successors of Sheriff Juneau filed a Motion to Dismiss for failure to state a claim.  ECF No. 20.  Simmons opposes that Motion.  ECF No. 34.

Defendant Robert Laborde filed a Motion to Dismiss for failure to state a claim. ECF No. 37.  Simmons opposes that Motion.  ECF No. 44.66.

Defendant APPJ filed a Motion to Dismiss for failure to state a claim.  ECF No. 54.  Simmons opposes that Motion and filed a Motion to Amend/Correct Complaint to restate his claim against the APPJ.  ECF No. 66.  The APPJ opposes that Motion.  ECF No. 68.

Simmons filed a second Motion to Amend Complaint.  ECF No. 81.  That Motion was granted (ECF No. 83) and the Amended Complaint was filed (ECF No. 84). However, Simmons discovered he had erred in stating he had the consent of all Defendants, so he filed a Voluntary Motion to Dismiss Amended Complaint (ECF No. 86), and then filed a third Motion to Amend Complaint (ECF No. 89).  Defendants Riddle and the Knolls filed an Appeal to the District Judge of the Magistrate Judge's Decision to grant Simmons's second Motion to Amend (ECF No. 87), and a Motion to Vacate the Order granting Simmons's second Motion to Amend (ECF No. 89).

8

# I.    Law and Analysis

## A.    Under Fed. R. Civ. P. 12(b)(6), a court may dismiss a claim if it is not facially plausible.

A court may grant a motion to dismiss for "failure to state a claim upon which relief can be granted" under Fed. R. Civ. P. 12(b)(6).  "[A] complaint will survive dismissal for failure to state a claim if it contains 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Legate v. Livingston*, 822 F.3d 207, 210 (5th Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (internal citation and quotation omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  The court must view all well-pleaded facts in the light most favorable to the plaintiff.  *See Yumilicious Franchise, L.L.C. v. Barrie*, 819 F.3d 170, 174 (5th Cir. 2016).

A motion to dismiss an action pursuant to Fed. R. Civ. P. Rule 12(b)(6), for failure to state a claim admits the facts alleged in the complaint, but challenges the plaintiff's right to relief based upon those facts. *See Crowe v. Henry*, 43 F.3d 198, 203 (5th Cir. 1995).  In particular, a complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *See Heras v. National Railroad Passenger Corp.*, 10 F.3d 1142, 1144 (5th Cir. 1994), vacated on other grounds, 512 U.S. 1231 (1994); See *Doe v. United States Department of Justice*, 753 F.2d 1092, 1102 (D.C. Cir. 1985).  The factual allegations of the complaint must be

taken as true, and any ambiguities must be resolved in favor of the pleader.  *See Doe*, 753 F.2d at 1101.  The Court must presume that general allegations embrace the specific facts that are necessary to support the claim.  *See National Organization for Women, Inc. v. Scheidler*, 510 U.S. 249 (1994) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)).

### B.  <u>The action against Didier should be dismissed for lack of service.</u>

The original Complaint was filed on July 5, 2022.  Fabius Anthony Didier ("Didier) as the heir of Fabius "Potch" Didier (in his individual and official capacities), a former Avoyelles Parish Sheriff, was never served.  Accordingly, it is recommended that the Complaint against Didier, as the heir of former Sheriff Fabius ("Potch") Didier, be dismissed without prejudice for failure to effect service, pursuant to Fed. R. Civ. P. 4(m).  *See McGinnis v. Shalala*, 2 F.3d 548, 550 (5th Cir. 1993), cert. den., 510 U.S. 1191 (1994); *Systems Signs Supplies v. U.S. Dept. of Justice*, 903 F. 2d 1011, 1013 (5th Cir. 1990); *Kersh v. Derosier*, 851 F.2d 1509, 1512 (5th Cir. 1988).

### C.  <u>Simmons's first Motion to Amend, and APPJ's Motion to Dismiss, should be granted.</u>

The APPJ filed a Motion to Dismiss for failure to state a claim.  ECF No. 54. In response, Simmons filed his first Motion to Amend Complaint,[8] attempting to more completely state his claim against the APPJ.  ECF No. 66.

---

[8] Simmons's Motion to Amend (ECF No. 66) was filed outside of the 21 days for filing a Motion to Amend as a matter of course in response to a pleading pursuant to Fed. R. Civ. P. 15(a)(1).

Rule 15 mandates that leave to amend "be freely given when justice so requires." Fed. R. Civ. P. 15(a). However, leave to amend is not automatic. The decision to grant or deny a motion to amend is within the sound discretion of the trial court. *See Avatar Exploration, Inc. v. Chevron, U.S.A., Inc.*, 933 F.2d 314, 320 (5th Cir. 1991). The district court's ruling is reversible only for an abuse of discretion. *See Wimm v. Jack Eckerd Corp.,* 3 F.3d 137, 139 (5th Cir. 1993).

Five factors must be considered in determining whether to deny a party leave to amend a complaint: (1) undue delay; (2) bad faith or dilatory motive; (3) repeated failure to cure deficiencies by previous amendments; (4) undue prejudice to the opposing party; and (5) futility of the amendment. *See Smith v. EMC Corp.*, 393 F.3d 590, 595–96 (5th Cir. 2004) (citing *Rosenzweig v. Azurix Corp.,* 332 F.3d 854, 864 (5th Cir. 2003)); *see also Freeman v. Continental Gin Co.*, 381 F.3d 459, 468-69 (5th Cir. 1967). Absent these factors, leave to amend should be "freely given." *See Smith*, 393 F.3d at 595–96 (citing *Foman v. Davis,* 371 U.S. 178, 182 (1962)).

"While leave to amend must be freely given, that generous standard is tempered by the necessary power of a district court to manage a case." *See Little v. Liquid Air Corp.*, 952 F.2d 841, 846 (5th Cir.1992), *reh'g*, 37 F.3d 1069 (5th Cir. 1994) (quoting *Shivangi v. Dean Witter Reynolds, Inc.,* 825 F.2d 885, 890 (5th Cir. 1987)). An amendment is futile where the amended complaint fails to state a claim upon which relief can be granted. *See Henry v. U.S., I.R.S.*, 2003 WL 23112853, at *3 (E.D. La. 2003) (citing *Stripling v. Jordan Production Co., L.L.C.*, 234 F.3d 863,

873 (5th Dir. 2000)). To determine futility, the district court should apply "the same standard of legal sufficiency as it applies under Rule 12(b)(6)." *See id.*

The APPJ has not contested Simmons's Motion to Amend and the amendment does nothing more than add factual allegations against the APPJ. However, amendment in this case would be futile.

In his proposed amended Complaint, Simmons contends the APPJ owned, maintained, and controlled the jail, and was a final policymaker for all matters relating to the jail. Simmons also contends that Defendants, Didier, Eddie Knoll, John Laborde, and Bordelon were "de facto final policymakers" for the APPJ and "commanded the resources of the Police Jury in performing the . . . unconstitutional acts." ECF No. 66-3 at 20. Thus, Simmons contends the APPJ is responsible for, and liable for, its co-Defendants' unconstitutional acts. ECF No. 66-3 at 21.

Under Louisiana law, the police jury is required: to provide a good and sufficient jail, La. R.S. 33:4715; to be responsible for the physical maintenance of all parish jails and prisons, La. R.S. 15:702; and to pay all expenses incurred in "the arrest, confinement, maintenance and prosecution of persons accused or convicted of crimes, La. R.S. 15:304. The Police Jury has no responsibility over the daily operation of the jail. The administration of the jails is the province of the sheriff. *See* La. R.S. 15:704; *O'Quinn v. Manuel*, 773 F.2d 605, 609 (5th Cir. 1985); *see also Howard v. Fortenberry*, 723 F.2d 1206, 1210 n.9 (5th Cir.), vacated in part on other grounds, 728 F.2d 712 (5th Cir. 1984) ("The Sheriff is the 'keeper of the public jail of his parish.'");

*Thompkins v. Belt*, 828 F.2d 298, 304 n.8 (5th Cir. 1987) ("Under Louisiana law, the sheriff has the duty of operating the jail and seeing to it that the prisoners are properly cared for."). A parish government has no authority over a parish sheriff or, by extension, his deputies. *See Broussard v. Boudoin,* 2004 WL 223984, at *1 (E.D. La. 2004) (citing *Foster v. Hampton,* 352 So.2d 197, 203 (La. 1977)). Thus, the APPJ is not responsible or liable for the actions of the sheriff or his deputies.

The APPJ is also not responsible or liable for the actions of the parish tax assessor (Dauzat). "The Louisiana Constitution, as well as statute, establishes assessment districts as independent of parish government and therefore, . . . the parish has no power, authority, or control over the assessor's duties or job. *See* La. Const. art. VI, §§ 5(G) and 7(B), and art. VII, § 24 ('Tax Assessors'). An assessor's duties are set forth by state, not parish, law. *See, e.g.,* La. R.S. §§ 47:1324, 1903, 1956–57, (1993). Moreover, the activities of the assessor are supervised by the Louisiana Tax Commission, a state board controlled by state officials. *See* La. R.S. § 47:1831–37. . . . [T]he parish has no control over the assessor." *United States v. Phillips*, 219 F.3d 404, 412 (5th Cir. 2000).

It is noted here that, although Simmons complains about the activities of John Laborde, a former parish tax assessor and the father of Keith Laborde, he does not contend that John Laborde's actions in furtherance of Simmons's arrest and prosecution were taken within his capacity and duties as the Avoyelles Parish Tax Assessor.

13

Likewise, the APPJ is not responsible or liable for the actions of the parish coroner.[9]  *See Mullins v. State,* 387 So.2d 1151, 1152 (La. 1980).  And the APPJ is also not responsible or liable for the actions of the District Attorney or his staff.[10]  *See Mullins*, 387 So.2d at 1153-54.

Finally, Simmons further contends the APPJ conspired with the other Defendants to "perpetuate" the "rape myth."  This does not state a claim for violation of Simmons's constitutional rights under § 1983, nor does he show how it states a claim under Louisiana state law.

---

[9] "The office of coroner is provided for in the Louisiana Constitution.  La. Const. art. 5, § 29. . . .  Coroners are members of the judicial branch of government, and although their jurisdiction is limited to the parish in which they hold office, coroners are state officials who perform state functions." *Carriere v. St. Landry Parish Police Jury,* 1997–1914 (La.3/4/98), 707 So.2d 979, 981 (citing *Mullins,* 387 So.2d at 1153); *see also Regions Bank v. Parish of Caddo*, 42,920 (La. App. 2d Cir. 2/27/08), 978 So.2d 494, 498, *writ den.,* 2008-0669 (La. 5/30/08), 983 So.2d 897.  "[I]t is the state legislature, and not the local governing authority, that regulates the coroner's duties and powers.  R.S. 33:1551 et seq.; La. C. Cr. P. 101 et seq." *Mullins*, 387 So.2d at 1153.  "Stringent regulation by the legislature, devoid of any control by the local governing authority, assists the coroner in fulfilling his primary function: 'to determine the possibility of violations of criminal law or of the existence of public health hazards in certain cases of death.'" *Mullins*, 387 So.2d at 1153; *Sizemore v. West Jefferson General Hospital*, 260 So. 2d 800, 802 (La. App. 4th Cir. 1972).

[10] "[T]he district attorney, like the coroner, operates independently of regulation by the local governing authority." *Mullins*, 387 So.2d at 1154 (citing *State ex rel. Police Jury of Parish of Vernon v. Davis*, 120 La. 862, 45 So. 838 (1908), and *Nielson v. Jefferson Parish Sheriff's Office*, 242 So. 2d 91 (La. App. 4th Cir. 1970)); *see also Burns v. May,* 2006 WL 1308120, at *1 (W.D. La. 2006), *report and recommendation adopted,* 2006 WL 8460062 (W.D. La. 2006) ("[T]he district attorney has charge and control of criminal prosecution s without regulation by the parish.").

Because Simmons has not stated a factual or legal basis for a claim against the APPJ, the APPJ's Motion to Dismiss (ECF No. 54) should be granted and Simmons's action against the APPJ should be dismissed without prejudice.

**D.  Simmons's Motion to Voluntarily Dismiss his second Amended Complaint should be granted, and Defendants' Motion to Vacate and Appeal should be denied as moot.**

Simmons filed a second Motion to Amend Complaint (ECF No. 81) that was granted (ECF No. 83), and the Amended Complaint was filed (ECF No. 84). Admitting an error as to having the consent of all Defendants, Simmons filed a Voluntary Motion to Dismiss Amended Complaint (ECF No. 86).  Defendants Riddle and the Knolls also filed an Appeal of the Magistrate Judge's Decision to the District Judge (ECF No. 87), as well as a Motion to Vacate the Order granting Simmons's second Motion to Amend (ECF No. 89).

Simmons's voluntary Motion to Dismiss Amended Complaint (ECF NO. 86) should be granted and his Amended Complaint (ECF No. 84) should be stricken.

Because Simmons's Amended Complaint (ECF No. 84) has been voluntarily withdrawn, Defendants' Motion to Vacate (ECF No. 89) the Order granting Simmons's second Motion to Amend  should be denied as moot.

Defendants' Appeal (ECF No. 87) of the Order granting Simmons's Second Motion to Amend should also be denied as moot.

E.   **Simmons's third Motion to Amend Complaint should be granted in part and denied in part.**

Simmons filed a third Motion to Amend Complaint (ECF No. 88), seeking to substitute Linda Faye Dauzat as the heir of Burton Dauzat.  ECF No. 88-2 at 6.  Simmons also seeks to substitute Marjorie Bordelon Melancon, the independent administrator of the succession of Marilyn Larson Bordelon (the heir of Dr. Filmore Paul ("F.P.") Bordelon) for F.P. Bordelon.  ECF NO. 88-3 at 7.

1.   **Substitution of heirs or representatives of deceased Defendants.**

Fed. R. Civ. P. 25 provides in pertinent part:

(a) Death.
> (1) Substitution if the Claim Is Not Extinguished.  If a party dies and the claim is not extinguished, the court may order substitution of the proper party.  A motion for substitution may be made by any party or by the decedent's successor or representative.  If the motion is not made within 90 days after service of a statement noting the death, the action by or against the decedent must be dismissed. . . .

Rule 25(a) is the procedural device which, for the federal district court, controls the manner in which substitution of parties may be affected following the death of a party in an action which survives under state law.  *See Ransom v. Brennan*, 437 F.2d 513, 520 (5th Cir. 1971), *cert. den.*, 403 U.S. 904 (1971).  Rule 25(a)(3) provides that a suggestion of death must be served on nonparties in accordance with Rule 4, and Rule 25(a)(1) states in no uncertain terms that the 90-day deadline begins to run upon service.  *See Webb v. Town of St. Joseph*, 2016 WL 2726648, at *1 (W.D. La. 2016).  The Fifth Circuit has held that Rule 25 means what it says.  *Webb*, 2016 WL 2726648,

16

at *1 (citing *Sampson v. ASC Industries*, 780 F.3d 679 (5th Cir. 2015)).  Neither Rule 25 nor *Sampson* suggest that service is not required when there is no succession opened or when a defendant is not provided notice of who the decedent's successor is. *See Webb*, 2016 WL 2726648, at *1.  The 90-day period begins to run upon service of the legal successors.  *See Webb*, 2016 WL 2726648, at *1.

Simmons appropriately names heirs or administrators to represent Dauzat and Bordelon.  Therefore, Simmons's motions to substitute Linda Faye Dauzat as the heir of Burton Dauzat, and Marjorie Bordelon Melancon as the independent administrator of the succession of Marilyn Larson Bordelon (the heir of Dr. Filmore Paul ("F.P.") Bordelon) should be GRANTED.

### 2.   Substitution of successors in office for official capacity claims.

Simmons also seeks to add Heath Pastor, the Avoyelles Parish Assessor, as a Defendant in his official capacity because he is the successor in office to John Laborde, the former Assessor (and the father of Keith Laborde).  ECF No. 88-2 at 6-7.

Simmons seeks to add Dr. James Bordelon as a defendant, in his official capacity as the Avoyelles Parish Coroner, and as successor in office to former coroner Dr. F.P. Bordelon.  ECF No. 88-3 at 7-8.

Fed. R. Civ. P. 25(d) provides:

(d) Public Officers; Death or Separation from Office. An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party. Later proceedings should be in the substituted party's name, but any misnomer not affecting the parties'

substantial rights must be disregarded. The court may order substitution at any time, but the absence of such an order does not affect the substitution.

"The general term 'public officer' ... comprises Federal, State, and local officers." Rule 25, Advisory Committee Notes, Note to Subdivision (d)(1). "In general [Rule 25(d)] will apply whenever effective relief would call for corrective behavior by the one then having official status and power, rather than one who has lost that status and power through ceasing to hold office." Note to Subdivision (d)(1); *see also Kentucky v. Graham*, 473 U.S. 159, 166 n. 11 (1985); *Aschan v. Auger*, 861 F.2d 520, 521 n. 2 (8th Cir. 1988) (automatically substituting new warden in his official capacity for deceased warden defendant in a habeas corpus action); *American Civil Liberties Union of Mississippi, Inc. v. Finch*, 638 F.2d 1336, 1341-42 (5th Cir. 1981); *Muslow v. Board of Supervisors of Louisiana States University*, 2020 WL 4471647, * 11 (E.D. La. 2020).

However, Simmons did not allege any actions taken by John Laborde in his official capacity as Assessor. Instead, he alleged only that John Laborde, as Keith Laborde's father, attempted to conceal Keith Laborde's alleged offenses against the twins by pushing for the prosecution of Simmons. Although Simmons contends John Laborde use his political clout, he does not allege that anything he did was within the scope of or related to his duties in his official capacity as the Avoyelles Parish Assessor. Accordingly, Simmons's Motion to Amend, to substitute Heath Pastor in his official capacity for John Laborde in his official capacity, should be denied in part.

Simmons alleges that Dr. F.P. Bordelon conducted medical examinations of the twins in his official capacity as the Avoyelles Parish Coroner/medical examiner, and helped to suppress his examination reports from the defense. Because Simmons alleges that Dr. F.P. Bordelon acted within the scope of his official capacity, Simmons's Motion to Amend to substitute Dr. James Bordelon in his official capacity for Dr. F.P. Bordelon in his official capacity as Coroner (ECF No. 88), should be granted in part.

F.    **The Motion to Dismiss filed by the heirs of Sheriff Juneau should be granted in part and denied in part.**

Juneau's successors/representatives filed a Motion to Dismiss (ECF No. 20). They assert that Simmons has failed to state a claim against Juneau.

Simmons asserts that former Avoyelles Parish Deputy Sheriff Floyd Juneau: requested and obtained an arrest warrant for an unnamed person for the rape of the twin girls; helped interview and take statements from the twins and Keith Laborde; helped coach the victims' statements and testimony; and helped suppress the twins' and Keith Laborde's statements.[11]

---

[11] Simmons has sued two former Avoyelles Parish Deputy Sheriffs (Barbara Decuir-Walker and Robert Laborde), two deceased Deputy Sheriffs (Burton Dauzat and Melvin Villemarette), and deceased Avoyelles Parish Deputy Sheriff Floyd Juneau, all in both their individual and official capacities.

Simmons contends Floyd requested and obtained an arrest warrant for an unnamed person for the rape of the twin girls. Robert Laborde executed that warrant against Simmons "on view" and without probable cause.

Simmons contends Juneau obtained an arrest warrant with no name on it, and that he was arrested with that warrant by another officer. That assertion does not state a claim against Juneau for violation of either § 1983 or state law. Juneau did not issue or execute the warrant. Moreover, La. C. Cr. P. art. 203(3) provides that, if the name of the person to be arrested is unknown, the arrest warrant may designate the person by any name or description by which he can be identified with reasonable certainty. Therefore, the warrant was not defective simply because it did not include the name of the person to be arrested.

Simmons also contends Juneau assisted in "coaching" the twins and Keith Laborde's statements and testimony. This is, essentially, a claim of fabricated evidence. "[M]anufacturing evidence is a clear violation of the Due Process Clause." *Castellano v. Fragozo,* 352 F.3d 939, 955 (5th Cir. 2003), cert. den., 543 U.S. 808 (2004)[12]; *Williams v. Connick*, 2014 WL 172520, at *13 (E.D. La. 2014).

---

Simmons further contends that Robert Laborde assaulted and shot him post-arrest, helped conduct an unconstitutional lineup, helped coach the victims' statements and testimony, helped suppress the victims' statements, and participated in a conspiracy to convict Simmons in order to conceal the fact that his cousin, Keith Laborde, had been the person who sexually assaulted his cousins (the twins).

Simmons contends that Decuir-Walker assisted with the unconstitutional lineup, helped coach the victims' statements and testimony, and helped suppress the victims' statements.

Simmons contends that Juneau and Dauzat helped coach the victims' statements and testimony, and helped suppress the victims' statements.

Simmons has not made any specific factual allegation involving Villemarette.

20

[12] Abrogated in part on other grounds by *Thompson v. Clark,* 142 S.Ct. 1332 (U.S. 2022) (recognizing a Fourth Amendment malicious prosecution claim).

However, in order to establish the personal liability of a certain defendant to a plaintiff who is claiming damages for deprivation of his civil rights, that plaintiff must show that a particular defendant's action or inaction was a violation of the plaintiff's civil rights. *See Reimer v. Smith*, 663 F.2d 1316, 1322 n. 4 (5th Cir. 1981) ("It is axiomatic that a plaintiff cannot succeed in a § 1983 action if he fails to demonstrate a causal connection between the state official's alleged wrongful action and his deprivation of life, liberty, or property."); *see also Parratt v. Taylor*, 451 U.S. 527, 537, n.3 (1981); *Coggin v. Longview Independent School District*, 337 F.3d 459, 472-73 (5th Cir. 2003), *cert. den.*, 540 U.S. 1018 (2003).

Simmons has not alleged specifically what Juneau himself did to "coach" the witnesses, or what parts of the witness statements were the result of having been "coached" by Juneau. Therefore, Simmons has not alleged specific facts to state a claim against Juneau under § 1983 or state law for "coaching" the witnesses.

Finally, Simmons contends Juneau helped to suppress the witnesses' initial statements because they were inconsistent. "*Brady* suppression occurs when the government fails to turn over even evidence that is 'known only to police investigators and not to the prosecutor.'" *Youngblood v. West Virginia*, 547 U.S. 867, 869–70 (2006) (quoting *Kyles v. Whitley,* 514 U.S. 419, 437-38 (1995) ("[T]he individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police")); *see also Pitonyak v. Stephens*, 732 F.3d 525, 533 (5th Cir. 2013). "Although the Supreme Court acknowledged that

22

covered parties sometimes fail to inform a prosecutor of all they know, it explained that 'procedures and regulations' must be established to effectuate the prosecutor's burden to learn." *Id.* "[T]he prosecutor's *Brady* duty extend[s] to evidence 'known only to police investigators' that had gathered evidence and interviewed witnesses in the investigation against the defendant." *Id.*

Suborning perjury and concealing exculpatory evidence by police officers are also constitutional violations. *See Luna v. Beto,* 391 F.2d 329, 332 (5th Cir. 1967), *cert. den.,* 394 U.S. 966 (1969); *see also Burge v. Parish of St. Tammany,* 187 F.3d 452, 480 n. 11 (5th Cir. 1999). A police officer violates clearly established constitutional rights when he conceals exculpatory evidence, including when he fails to disclose such evidence to the prosecuting attorney's office. *See Williams*, 2014 WL 172520, at *12 ("[A] police officer violates clearly established constitutional rights when he conceals exculpatory evidence, including when he fails to disclose such evidence to the prosecuting attorney's office.").[13]

Simmons contends Juneau helped interview and obtain statements from the witnesses. Therefore, according to Simmons's allegations, Juneau was aware of the existence of the witnesses' statements and had a duty to turn them over to the prosecutor, but did not do so. Therefore, Simmons has stated a claim against Juneau

---

[13] "[A] police officer cannot avail himself of a qualified defense if he ... deliberately conceals exculpatory evidence, for such activity violates clearly established constitutional principles." *Geter v. Fortenberry,* 849 F.2d 1550, 1559 (5th Cir.1988).

for a *Brady* violation.  The Motion to Dismiss filed by Juneau's successors (ECF No. 20) should be denied on the *Brady* issue and granted on all other issues.

G.    **Robert Laborde's Motion to Dismiss should be granted in part and denied in part.**

Robert Laborde, a former Avoyelles Parish Sheriff's Deputy, filed a Motion to Dismiss (ECF No. 37), contending Simmons's claims have prescribed and that Simmons fails to assert a claim for malicious prosecution under state law.

Simmons contends Robert Laborde helped conduct an unconstitutional lineup, helped coach the victims' statements and testimony, helped suppress the victims' statements, and participated in a conspiracy to convict Simmons in order to conceal the fact that his cousin, Keith Laborde, had been the person who sexually assaulted his cousins (the twins).

1.    **Simmons's claims of excessive force, assault, and battery are prescribed.**

Simmons asserts that, in 1977, Robert Laborde assaulted and shot him post-arrest in an attempt to coerce a confession.  Under § 1983, this claim is for use of excessive force.  Under Louisiana law that claim is for assault and battery.  Section 1983 actions and state law tort claims in Louisiana are governed by a one-year prescriptive period. *See McGregor v. LSU Board of Supervisors*, 3 F.3d 850, 863 (5th Cir. 1993), *cert. den.*, 510 U.S. 1131 (1994); *Moreau v. St. Landry Parish Fire District No. 3*, 413 F. Supp. 3d 550 (W.D. La. 2019), *aff'd*, 808 Fed. Appx. 225 (5th Cir. 2020); La. C.C. art 3492.  Simmons could have brought an action for those claims at any

24

time under § 1983 and state law.  Therefore, Simmons's § 1983 claim against Robert Laborde for use of excessive force in 1977, and his state law tort claims for assault and battery in 1977, are long prescribed.

> ### 2. Simmons's claims for malicious prosecution, wrongful arrest, false imprisonment, and intentional/reckless infliction of emotional distress are timely.

Robert contends Simmons's claims for malicious prosecution, wrongful arrest, and false imprisonment are also prescribed.  However, the prescriptive period for those claims did not begin to run until Simmons's convictions and sentences were vacated on February 14, 2022.  ECF No. 19-3 at 30.

"In order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.  A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983."  *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994); *see also Arnold v. Town of Slaughter*, 100 Fed. Appx. 321, 323 (5th Cir. 2004), *cert. den.,* 543 U.S. 966 (2004) ("Thus, unless his conviction has been overturned, a plaintiff cannot bring a § 1983 claim if prevailing on that claim would imply that his conviction was invalid.").  Louisiana law follows federal law in this.

*See Lemoine v. Wolfe*, 2014-1546 (La. 3/17/15), 168 So.3d 362, 368 (citing *Heck v. Humphrey*). Simmons's claims for malicious prosecution, false arrest, and false imprisonment challenged the validity of his underlying convictions and, therefore, were barred by *Heck* until his convictions were vacated. *See Heck,* 512 U.S. at 484 (malicious prosecution claim); *Lemoine,* 168 So.3d at 367-68 (malicious prosecution claim was barred by *Heck*); *Elphage v. Gautreaux*, 969 F. Supp. 2d 493, 515 (M.D. La. 2013) (citing *Nelson v. Nordyke*, 2009 WL 648889 (N.D. Tex. 2009)) (false arrest and false imprisonment claims were barred by *Heck*).

Simmons's state law claim for intentional or reckless infliction of emotional distress is also timely. "To prevail on a claim of intentional infliction of emotional distress, a plaintiff must establish '(1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct.'" *Burke v. Lopinto*, 2023 WL 2388282, at *8 (E.D. La. 2023) (quoting *White v. Monsanto Co.*, 585 So. 2d 1205, 1209 (La. 1991)). Because Simmons's claim for emotional distress arises from his prosecution and incarceration, his claim is directly related to his convictions. Therefore, it was barred by *Heck* until his convictions were vacated.

This action was filed on July 5, 2022, less than one year after Simmons's convictions were vacated. ECF No. 1. Therefore, Simmons's claims for malicious

prosecution, wrongful arrest, false imprisonment, and intentional/reckless infliction of emotional distress are timely.

### 3. Simmons asserts a claim for malicious prosecution under Louisiana law.

Laborde contends Simmons has not stated a claim for malicious prosecution under Louisiana law.[14]

Under Louisiana law, "the elements of the tort of malicious prosecution are: (1) the commencement or continuance of an original criminal or civil judicial proceeding; (2) its legal causation by the present defendants in the original proceeding; (3) its *bona fide* termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) the presence of malice therein; and (6) damage conforming to legal standards resulting to plaintiff." *Lemoine*, 168 So.3d at 367. A *bona fide* termination requires that "the underlying litigation . . . be brought to a conclusion *on the merits*," as opposed to "a procedural dismissal of the charges without prejudice." *Lemoine*, 168 So.3d at 372.

Simmons contends the named Defendants conspired to charge and convict him of two attempted aggravated rapes, that his convictions have been vacated due to *Brady* violations and "new evidence," that the District Attorney dismissed the charges against Simmons, that favorable evidence was suppressed and other evidence

---

[14] The United States Supreme Court recently held that litigants may bring a Fourth Amendment malicious prosecution claim under § 1983. *See Thompson v. Clark*, _U.S._, 142 S. Ct. 1332, 1337 (2022); *see also Armstrong v. Ashley*, 60 F.4th 262, 278 (5th Cir. 2023).

and testimony was falsified, and that Simmons was incarcerated for 44 years on those convictions. Simmons clearly asserts a Louisiana law claim for malicious prosecution.

Laborde argues that the dismissal of the charges against Simmons was not a "bona fide termination" in his favor. However, Simmons's convictions, on which these claims are based, were vacated. And the District Attorney dismissed the charges against him (if there were actually any pending charges at that point).

"A dismissal of a criminal prosecution pursuant to La. C. Cr. P. art. 691 will constitute a *bona fide* termination in favor of the malicious prosecution plaintiff unless the charge is dismissed pursuant to an agreement of compromise, because of misconduct on the part of the accused or in his behalf for the purpose of preventing trial, out of mercy requested or accepted by the accused, because new proceedings for the same offense have been instituted and have not been terminated favorably to the accused, or when the dismissal is due to the impossibility or impracticality of bringing the accused to trial." *Lemoine*, 168 So.3d at 364. A finding that Simmons was actually innocent was thus not required.

The state judge found there was newly discovered evidence that met the "four factors of *State v. Cavalier*, 96-3052 (La. 10/31/97), 701 So.2d 949, 951: (1) that the new evidence was discovered after trial; (2) that failure to discover the evidence before trial was not attributable to his lack of diligence; (3) that the evidence is material to the issues at trial; and (4) that the evidence is of such a nature that it would probably

produce a different verdict in the event of retrial." ECF No. 19-1 at 9. For purposes of this motion, the most significant of those factors appears to be the last one.

Because Simmons's convictions were vacated and the charges (if new charges had indeed been filed) against him were dismissed, those qualify as a *bona fide* termination. Therefore, Laborde's Motion to Dismiss Simmons's claim for malicious prosecution should be denied.

**H.** <u>**Simmons states some claims against the District Attorney Defendants in their official capacities and one claim against Eddie Knoll in his individual capacity.**</u>

Simmons sues Eddie Knoll (a former Avoyelles Parish District Attorney), Jeanette Knoll (a former Assistant District Attorney), and Riddle (the current Avoyelles Parish District Attorney), each in their individual and official capacities.

The Knolls and Riddle filed a Motion to Dismiss (ECF No. 19) asserting that: they have prosecutorial and Eleventh Amendment immunity from suit; all claims against them are barred by res judicata and collateral estoppel; and Simmons fails to state a claim against them under § 1983 or state law.

Simmons contends the trial prosecutors, Eddie Knoll and Jeanette Knoll: interviewed their witnesses and took statements from them; "systematically coached" their witnesses to identify Simmons by name and to get their stories straight about when and how the alleged rapes had happened, "thus fabricating false evidence against Simmons"; and "suppressed and did not disclose to Simmons the typewritten

reports in which [witnesses] gave statements inconsistent with their later testimony." ECF No. 1 at 11.  These actions resulted in Simmons's indictment for two counts of aggravated rape.  ECF No. 1 at 12.  Simmons further asserts they suppressed exculpatory evidence concerning the inconsistent statements of the witnesses and medical examination evidence, and conducted a suggestive lineup.[15]

Simmons contends that all three prosecutors also told the courts that all of the favorable evidence had been disclosed to Simmons, thereby forestalling his post-conviction motions by "falsely representing that all this evidence had in fact been disclosed to Simmons' counsel."  ECF No. 1 at 13-14.

Simmons further asserts the prosecutors concealed the absence of a police report that could substantiate an alleged altercation at John Mose's bar on May 8, and fabricated a police report concerning that altercation.  ECF No 1 at 13-14.  He asserts claims against the Knolls and Riddle in both their individual and official capacities.

### 1.    Simmons's claims are not barred by *res judicata.*

Defendants contend that, because the United States Fifth Circuit Court of Appeals has held that all of Simmons's claims against them are barred by

---

[15] Simmons was the only person in the lineup in handcuffs; a white man was included in the lineup; and the witnesses were permitted to view the lineup together and discuss which person could be the perpetrator.

absolute immunity, his claims now are barred *by res judicata. See Simmons v. Knoll,* 81 F.3d 156 (5th Cir. 1996). But that opinion was published in 1996, and did not include a detailed discussion that would inform this opinion. Accordingly,[16] the Court cannot determine what its implications may now be, if any. Instead, the Court must follow the United States Supreme Court opinion in *Van de Kamp v. Goldstein,* which "made clear that absolute immunity may not apply when a prosecutor is not acting as 'an officer of the court,' but is instead engaged in other tasks, say, investigative or administrative tasks." 555 U.S. 335, 342 (2009) (citing *Imbler v. Pachtman*, 424 U.S. 409, 431 n.33 (1976)). Other binding Fifth Circuit opinions are in accord. *See, e.g., Burge*, 187 F.3d at 466-67 ("[P]ersonal or individual immunity is not available in an official capacity suit.").

Defendants continue to argue, however, that Simmons brought these claims against these Defendants in 1995 and the claims were dismissed. Therefore, the current action is barred by *res judicata.* However, dismissal of claims as barred under *Heck v. Humbphrey* is not a dismissal on the merits. When claims are raised properly, and an underlying conviction has been reversed or vacated, a new action asserting those claims is not barred.

---

[16] "Simmons' claims against the prosecutors and witnesses Sharon Sanders, Karen Sanders, and Kenneth Laborde are barred by absolute immunity." *Simmons v. Knoll*, 81 F.3d 156, at *1 (5th Cir. 1996).

> **2.** **Defendants have absolute immunity from Simmons's individual capacity claims except for the claim against Eddie Knoll for fabrication of a false police report.**

A prosecutor sued in his individual capacity is immune from civil suit for damages under § 1983 for his actions in initiating and pursuing a criminal prosecution through the judicial process. *See Imbler*, 424 U.S. at 431 ("[A] state prosecuting attorney who acted within the scope of his duties in initiating and pursuing a criminal prosecution" was not subject to suit under Section 1983"). The immunity afforded prosecutors is absolute, not qualified, and protects a prosecutor from being sued in connection with his duties altogether, regardless of the merits of the claim. *See Lucas v. Parish of Jefferson*, 999 F. Supp. 839, 842 (E.D. La. 1998). Absolute immunity protects prosecutors from all liability even when they act "maliciously, wantonly, or negligently." *Morrison v. City of Baton Rouge*, 761 F.2d 242, 248 (5th Cir. 1985). "[A]cts which are investigative or administrative do not carry absolute immunity," but are subject only to qualified immunity. *Brooks v. George County, Miss.*, 84 F.3d 157, 168 (5th Cir. 1996), *cert. den.,* 519 U.S. 948 (1996); *Phillips v. Whittington*, 497 F. Supp. 3d 122, 145 (W.D. La. 2020), *aff'd*, 2022 WL 797418 (5th Cir. 2022).

Absolute immunity applies when a prosecutor: prepares to initiate a judicial proceeding, *Burns v. Reed,* 500 U.S. 478, 492 (1991); appears in court to present evidence in support of a search warrant application, *Kalina v. Fletcher,* 522 U.S. 118, 126 (1997); or fulfills administrative duties such as supervision, training, or

information-system management, *Van de Kamp,* 555 U.S. at 349. A prosecutor's absolute immunity also extends to the handling of appeals and other post-conviction proceedings. *See Henzel v. Gerstien,* 608 F.2d 654, 657 (5th Cir. 1979); *Mattox v. Owens*, 2014 WL 785817, at *3 (E.D. Tex. 2014). A prosecutor's immunity is not defeated by showing that the prosecutor acted wrongfully or even maliciously. *Mattox*, 2014 WL 785817, at *3 (citing *Imbler,* 424 U.S. at 427 n. 27).

However, absolute immunity may not apply when a prosecutor is not acting as "an officer of the court," but is instead engaged in other tasks, such as investigative tasks. *See Van de Kamp,* 555 U.S. at 342 (citing *Imbler,* 424 U.S. at 430). So absolute immunity does not apply when a prosecutor gives advice to police during a criminal investigation, see *Burns,* 500 U.S. at 496; makes statements to the press, *Buckley v. Fitzsimmons,* 509 U.S. 259, 277 (1993); or acts as a complaining witness in support of a warrant application, *Kalina,* 522 U.S. at 132.

"Louisiana law tracks federal law on absolute prosecutorial immunity." *Singleton v. Cannizzaro*, 956 F.3d 773, 779 n. 4 (5th Cir. 2020) (citing *Knapper*, 681 So.2d at 947); *Sinclair v. State ex rel. Department of Public Safety and Corrections,* 1999-2290 (La. App. 1st Cir. 11/3/00, 769 So.2d 1270, 1271, *writ den.*, 2000-Cl-3331 (La. 1/25/22), 806 So.2d 665, *cert. den.*, 536 U.S. 910 (2002) (citing *Knapper v. Connick,* 96-0434 (La. 10/15/96), 681 So.2d 944, and *Imbler,* 424 U.S. at 427-28); *see also Sinclair v. State ex rel. Department of Public Safety and Corrections,* 1999-2290 (La. App. 1st Cir. 11/3/00, 769 So.2d 1270, 1271, *writ den.*, 2000-Cl-3331 (La. 1/25/22),

33

806 So.2d 665, *cert. den.*, 536 U.S. 910 (2002) (citing *Knapper v. Connick,* 96-0434 (La. 10/15/96), 681 So.2d 944, and *Imbler,* 424 U.S. at 427-28).

Simmons's allegations mostly concern the prosecutors' activities in initiating the charges against Simmons, preparing for, and participating in the trial, and their post-conviction work.  A state prosecutor is absolutely immune for his actions in "initiating a prosecution and in presenting the state's case, "even where the prosecutor knowingly used perjured testimony, deliberately withheld exculpatory information, or failed to make full disclosure of all facts casting doubt upon the state's testimony." *Johnson v. Louisiana,* 2010 WL 996475, at *9 (W.D. La. 2010) (citing *Prince v Wallace*, 568 F.2d 1176, 1178-79 (5th Cir. 1978).  Claims that a prosecutor failed to disclose exculpatory evidence either pre-indictment or post-conviction, "fall squarely within the ambit of absolute immunity." *Johnson,* 2010 WL 996475, at *9.

In all respects alleged by Simmons except one, the Knolls and Riddle are entitled to absolute immunity in their individual capacities.  Simmons contends Eddie Knoll fabricated a police report to defeat his alibi evidence.  The creation and use of the fake evidence constitutes investigative conduct for which an individual defendants would not be absolutely immune. *See Singleton*, 956 F.3d at 784; *see also Wearry v. Foster*, 33 F.4th 260, 272 (5th Cir. 2022), *cert. den.,* 143 S. Ct. 2459 (U.S. 2023) (finding a district attorney did not have absolute immunity for the creation of fictitious testimony as false evidence to use against a defendant); *Buckley*, 509 U.S. at 273 (holding the prosecutors were not absolutely immune for allegedly fabricating

evidence because they lacked probable cause to arrest the petitioner or initiate judicial proceedings at the time of the alleged fabrication).

Therefore, the Knolls and Riddle are entitled to absolute immunity in their individual capacities against Simmons's § 1983 claims and state law claims except as to Simmons's claim against Eddie Knoll for the fabrication of a false police report.

### 3. Defendants do not have prosecutorial absolute immunity or Eleventh Amendment immunity from Simmons's official capacity *Monell* claims.

Defendants contend they are entitled to absolute immunity in their official capacities, either as prosecutors or under the Eleventh Amendment.

Absolute immunity is not available to the Knolls and Riddle in their official capacities.[17] *See Burge*, 187 F.3d at 466-67.

The Eleventh Amendment to the U.S. Constitution bars all suits in law or equity against an unwilling state. *See Neuwirth v. Louisiana State Board of*

---

[17] "[A] Louisiana district attorney does not act on behalf of the State of Louisiana when developing policies governing *Brady* obligations for his office." . . . [F]or purposes of a § 1983 official capacity suit, the district attorney's office . . . resembles other *local* government entities." *Reeder v. Williams*, 2023 WL 2771481, at *3 (E.D. La. 2023) (citing *Kimble v. Jefferson Parish Sheriff's Office*, 2022 WL 1793876, at *3 (5th Cir. 2023); *Burge v. Parish of St. Tammany*, 187 F.3d 452, 470 (5th Cir.1999)); *see also Hudson v. City of New Orleans*, 174 F.3d 677 (5th Cir. 1999); *Jones v. Williams*, 2023 WL 3211865, at 3 n. 31 (E.D. La. 2023); *Floyd v. Dillmann*, 2023 WL 2375362, at *4 n. 42 (E.D. La. 2023); *Smith v. Williams*, 2023 WL 22633841, at *7 n. 115 (E.D. La. 2023).

"Considering the Louisiana constitutional and statutory law and tort cases, . . . in a suit against a district attorney in his official capacity under § 1983 for constitutional torts caused by the district attorney's policies regarding the acquisition, security, and disclosure of *Brady* material, a victory for the plaintiff imposes liability on the district attorney's office as an independent local entity." *Connick v. Thompson*, 563 U.S. 51, __ (2011).

*Dentistry*, 845 F.2d 553, 556 (5th Cir. 1988); *see also Walker v. Livingston*, 381 Fed. Appx. 477, 479 (5th Cir. 2010) (*citing Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996)). Under La. R.S. 13:5106, the state of Louisiana has not waived her immunity under the Eleventh Amendment from suit in federal court.

However, recent jurisprudence has made it clear a district attorney in his official capacity is not an arm of the State, but is considered to be a local government entity. "Official-capacity suits ... 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Phillips*, 497 F. Supp. 3d at 150 (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) and *Monell v. New York City Department of Social Services*, 436 U.S. 658, 690 n.55 (1978)). "As long as the government entity receives notice and an opportunity to respond, an official capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.* "[A] Louisiana district attorney, sued in his or her official capacity, is a local government official who is not entitled to Eleventh Amendment immunity." *Burge*, 187 F.3d at 466. "For purposes of 'official capacity' suits under § 1983, the district attorney's office resembles other local government entities." *Burge*, 187 F.3d at 470 (citing *Mairena v. Foti*, 816 F.2d 1061, 1064 n. 1 (5th Cir. 1987), *cert. den.*, 484 U.S. 1005 (1988)); *see also Kimble v. Jefferson Parish Sheriff's Office,* 2023 WL 1793876, at * 3 (5th Cir. 2023) (not reported); *Jones v. Williams,* 2023 WL 3211865, at *3 (E.D. La. 2023).

"[O]fficial capacity suits generally represent another way of pleading an action against an entity of which an officer is an agent." *Burge*, 187 F.3d at 470 (citing *Monell,* 436 U.S. at 691 n. 55). "Unlike government officials sued in their individual capacities, municipal entities and local governing bodies do not enjoy immunity from suit, either absolute or qualified, under § 1983." *Burge*, 187 F.3d at 470 (citing *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 166 (1993)). Therefore, absolute prosecutorial immunity is not available in an official capacity suit. *See Burge*, 187 F.3d at 467.

Therefore, Defendants are not entitled to either absolute prosecutorial or Eleventh Amendment immunity for the claims made against them in their official capacities.

### 4. Simmons fails to state official capacity claims against the Knolls and Riddle.

Simmons contends the Knolls and Riddle are liable in their official capacities as "final policymakers."

Local governments are liable for a policy or custom that causes a constitutional injury under § 1983. *See Austin v. City of Pasadena, Texas,* 74 F.4th 312, 332 (5th Cir. 2023) (citing *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 694 (1978). To succeed on a *Monell* claim, plaintiffs "must show (1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose moving force is that

policy (or custom)." *Austin,* 74 F.4th at 332 (citing *Newbury v. City of Windcrest*, 991 F.3d 672, 680 (5th Cir. 2021)).

The first element, the existence of a policy or custom, is satisfied if a practice is "so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). "Allegations of an isolated incident are not sufficient to show the existence of a custom or policy." *Fraire v. City of Arlington,* 957 F.2d 1268, 1278 (5th Cir. 1992), *cert. den.*, 506 U.S. 973 (1992). What must be shown is "that the policy itself violated federal law or authorized or directed the deprivation of federal rights." *Johnson v. Deep East Texas Regional Narcotics Trafficking Task Force*, 379 F.3d 293, 309 (5th Cir. 2004).

A municipality may be liable for failing to adopt policies. *See Rhyne v. Henderson County*, 973 F.2d 386, 392 (5th Cir. 1992) (citing *City of Canton v. Harris*, 489 U.S. 378, 387 (1989)). "While the municipal policy-maker's failure to adopt a precaution can be the basis for § 1983 liability, such omission must amount to an intentional choice, not merely an unintentionally negligent oversight." Id. "A failure to adopt a policy can be deliberately indifferent when it is obvious that the likely consequences of not adopting a policy will be a deprivation of constitutional rights." *Austin,* 74 F.4th at 332.[18]

---

[18] A plaintiff may also rely on the "single-incident" theory of liability, for which the constitutional violation must be the "obvious" consequence of a failure to train, and the showing of "obviousness" can substitute for the pattern of violations ordinarily necessary to establish municipal culpability. *See Connick,* 563 U.S. at 63. Failure to train is not applicable here since the district attorney himself is alleged to have been actively involved.

First, as an Assistant District Attorney, Jeannette Knoll was not a "final policymaker" for the Avoyelles Parish District Attorney. Therefore, she does not have official capacity liability under *Monell.*

Simmons alleges it was Defendants' custom: "that any black man accused of raping a white woman or girl, or in this case two white girls, was guilty"; "that if a black man was accused of raping a white woman, his conviction must be obtained by any means necessary, fair or foul"; "if securing the conviction of a black man accused of raping a white woman required witnesses to be coached, identification procedures to be rigged, testimony to be fabricated, evidence to be suppressed, and dishonest 'legal' maneuvering to be conducted, then these things would be done"; and "that once a black man was accused of raping a white woman or women, there would be no further investigation to determine whether someone else (especially someone white) might be the culprit and/or whether the alleged victims might be lying for reasons of their own." ECF No. 1 at 20-21.

Simmons alleges customs that he believes resulted in the violation of his constitutional rights. However, Simmons has not alleged a pattern of violations, nor has he alleged that the failure to adopt a policy resulted in the violation of his constitutional rights. Instead, Simmons alleges he was personally targeted by Keith Laborde for a very specific reason, and that everyone else conspired to help him. That does not support a claim of municipal liability for an unconstitutional policy or custom.

39

III.   **Conclusion**

Based on the foregoing, IT IS RECOMMENDED that the Complaint against Didier be DISMISSED WITHOUT PREJUDICE.

IT IS RECOMMENDED Simmons's first Motion to Amend Complaint (ECF No. 66), to state a claim against the APPJ, be GRANTED.

IT IS RECOMMENDED that the APPJ's Motion to Dismiss (ECF No. 54) be GRANTED and Simmons's action against the APPJ be DISMISSED WITHOUT PREJUDICE.

IT IS RECOMMENDED that Simmons's voluntary Motion to Dismiss Amended Complaint (ECF NO. 86) be GRANTED and that his Amended Complaint (ECF No. 84) be STRICKEN.

IT IS FURTHER RECOMMENDED that Defendants' Motion to Vacate (ECF No. 89) the Order granting Simmons's second Motion to Amend and their Appeal (ECF No. 87) of that Order both be DENIED AS MOOT.

IT IS RECOMMENDED that Simmons's third Motion to Amend Complaint (ECF No. 88) be DENIED IN PART as to the substitution of Heath Pastor in his

official capacity as the Avoyelles Parish Assessor and successor in office to John Laborde, for John Bordelon, and GRANTED IN PART in all other respects.

IT IS RECOMMENDED that the Motion to Dismiss filed for Juneau (ECF No. 20) be DENIED IN PART on the *Brady* issue and GRANTED IN PART on all other claims.

IT IS RECOMMENDED that Robert Laborde's Motion to Dismiss (ECF No. 37) be GRANTED IN PART as to Simmons's claims for excessive force, assault, and battery, and DENIED IN PART as to all other claims.

IT IS RECOMMENDED that the Motion to Dismiss (ECF No. 19) filed by Eddie Knoll, Jeannette Knoll, and Riddle be GRANTED IN PART as to Simmons's claims against them in their individual capacities–except the claim against Eddie Knoll for fabrication of evidence–and those claims should be DENIED AND DISMISSED WITH PREJUDICE. Defendants' Motion to Dismiss (ECF No. 19) should be DENIED IN PART as to the claim against Eddie Knoll in his individual capacity for fabrication of evidence. Defendants' Motion to Dismiss (ECF No. 19) should be GRANTED IN PART as to Simmons's claims against Eddie Knoll, Jeannette Knoll, and Riddle in their official capacities, and those claims should be DISMISSED WITHOUT PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), parties aggrieved by this Report and Recommendation have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written

objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  No other briefs (such as supplemental objections, reply briefs, etc.) may be filed.  Providing a courtesy copy of the objection to the undersigned is neither required nor encouraged. Timely objections will be considered by the District Judge before a final ruling.

Failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Judge, except upon grounds of plain error.

THUS DONE AND SIGNED in chambers in Alexandria, Louisiana, this ____31____ day of August 2023.

Joseph H.L. Perez-Montes
United States Magistrate Judge